No. 180     March 11, 2026     637

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

FIRCREST PROPERTIES, LLC,
*Plaintiff-Appellant,*

*v.*

Tyler SIMMONS,
Connor Erlandson-Sims and all other occupants,
*Defendants-Respondents.*

Clackamas County Circuit Court
24LT22490; A186152

Susie L. Norby, Judge pro tempore.

Submitted October 31, 2025.

Brian D. Cox and Cox & Associates, LLC, and Michael Stout and Stout Law LLC, filed the brief for appellant.

No appearance for respondents.

Before Ortega, Presiding Judge, Joyce, Judge, and Hellman, Judge.

HELLMAN, J.

Reversed and remanded.

**HELLMAN, J.**

Landlord appeals a judgment in favor of tenant Tyler Simmons and "all other occupants" issued after a forcible entry and detainer (FED) trial. On appeal, landlord raises two assignments of error. In the first assignment of error, landlord argues that the trial court erred in determining that the "first year of occupancy" referred to in ORS 90.427(1)(a) applied to each tenant, individually, which led the trial court to enter judgment in favor of Simmons because he had resided in the apartment longer than one year.

The legal question thus presented is whether, within the "first year of occupancy," a landlord may terminate a month-to-month tenancy as to all tenants, or only those tenants who have "resided in the dwelling unit for one year or less." ORS 90.427(1)(a); ORS 90.427(3)(b). As we explain below, under a correct interpretation of ORS 90.427(1)(a) and ORS 90.427(3)(b), if any one of the tenants has "resided in the dwelling unit for one year or less," a landlord may terminate a month-to-month tenancy as to all tenants listed on the rental agreement that gave rise to the tenancy. Accordingly, we reverse and remand. Our decision on landlord's first assignment of error eliminates the need to address its second assignment of error, which asserted that the trial court erred in granting a limited judgment of dismissal in favor of "all other occupants" when they did not file an answer, responsive pleadings, or otherwise appear in the case.

The relevant facts are few and undisputed. In November 2022, Simmons rented, on a month-to-month basis, an apartment owned and managed by landlord. Also listed on the rental agreement was RS, a minor. On May 6, 2024, with landlord's permission, Simmons added Connor Erlandson-Sims to the rental agreement. On September 11, 2024, landlord mailed a notice of termination of tenancy to Simmons, Erlandson-Sims, and "all other[]" tenants. Simmons did not vacate the premises within the timeframe set by landlord. On October 22, 2024, landlord filed a residential eviction complaint against Simmons, Erlandson-Sims, and "all other occupants."

At trial, landlord took the position that the eviction notice was permissible because ORS 90.427(3)(b) permits

termination of a month-to-month tenancy with a written 30-day notice "[a]t any time during the first year of occupancy." Landlord admitted that Simmons had resided in the apartment for longer than a year. However, landlord pointed to ORS 90.427(1)(a), which defines "first year of occupancy" as "all periods in which any of the tenants has resided in the dwelling unit for one year or less." Because Erlandson-Sims had been added to the rental agreement less than a year prior, landlord asserted that the eviction was proper because one among "any of the tenants" had lived in the apartment for less than a year.

The trial court disagreed with landlord's interpretation of the statute. The trial court indicated that "the question of interpretation comes down to whether each tenant of a property has a tenancy or whether a tenancy is always to include all persons * * * in possession." The trial court determined that under landlord's interpretation, the statute had an "implicit intention that the rights given to tenants who have occupied more than a year will reset and be removed upon the addition of a new tenant." The trial court "[could not] believe that was the intention of the legislature." As a result, the trial court granted judgment in favor of Simmons and "all other occupants."[1] This appeal followed.

We review the trial court's interpretation of a statute for legal error. *Summit RWP, Inc. v. Hallin*, 334 Or App 529, 538, 557 P3d 1113 (2024).

The "paramount goal" in statutory interpretation is to "discern[] the legislature's intent." *State v. Gaines*, 346 Or 160, 171, 206 P3d 1042 (2009); *see also* ORS 174.020(1)(a) ("In the construction of a statute, a court shall pursue the intention of the legislature if possible."). To accomplish that goal, the Supreme Court established a framework that starts with the text and context of the statute at issue because "there is no more persuasive evidence of the intent of the legislature than the words by which the legislature undertook to give expression to its wishes." *Gaines*, 346 Or at 171 (internal quotation marks omitted).

---

[1] The trial court also granted judgment against Erlandson-Sims; that decision is not before us.

In Oregon, most residential landlord-tenant relationships are governed by rental agreements under ORS chapter 90, the Oregon Residential Landlord and Tenant Act. *See* ORS 90.115 ("[ORS chapter 90] applies to, regulates and determines rights, obligations and remedies under a rental agreement, wherever made, for a dwelling unit located within this state."). A rental agreement "means all agreements, written or oral * * * embodying the terms and conditions concerning the use and occupancy of a dwelling unit and premises." ORS 90.100(42). There are three types of rental agreements: a week-to-week tenancy, month-to-month tenancy, or fixed-term tenancy. *Id*. This case involves a "month-to-month tenancy," which is one that "automatically renews and continues for successive monthly periods on the same terms and conditions originally agreed to, or as revised by the parties, until terminated by one or both of the parties." ORS 90.100(32).

This appeal requires us to interpret two statutes that relate to the termination of a month-to-month tenancy: ORS 90.427(3)(b) and ORS 90.427(1)(a). ORS 90.427(3)(b) provides, "At any time during the first year of occupancy, the landlord may terminate the tenancy by giving the tenant notice in writing not less than 30 days prior to the date designated in the notice for the termination of the tenancy." ORS 90.427(1)(a) provides, "As used in this section[,] '[f]irst year of occupancy' includes all periods in which any of the tenants has resided in the dwelling unit for one year or less."

Again, to answer the legal question presented in this appeal we must determine whether, within the "first year of occupancy," a landlord may terminate the month-to-month tenancy as to all tenants, or only those tenants who have "resided in the dwelling unit for one year or less."

Under the *Gaines* framework, we start with the text of the statutes. Our analysis depends on an interpretation of the following terms and phrases:

- Tenant
- Tenancy
- First year of occupancy

- All periods

- Any of the tenants

As relevant here, a tenant is defined as "a person, including a roomer, entitled under a rental agreement to occupy a dwelling unit to the exclusion of others[.]" ORS 90.100(51)(a)(A). A tenant's right to occupy a dwelling unit arises under a rental agreement. ORS 90.100(42). To put it another way, the rental agreement establishes "the tenancy." Therefore, even if there are multiple tenants listed on one rental agreement, the rental agreement itself gives rise to only one "tenancy." Thus, the termination of "the tenancy" under ORS 90.427(3)(b) terminates "the tenancy" as to all persons listed on the rental agreement.

The only possible ambiguity in ORS 90.427(3)(b) arises from the use of the phrase "giving *the* tenant notice," in reference to the termination of the tenancy. The use of the singular "tenant" could be read to suggest a legislative intent to consider termination proceedings against individual tenants. However, when we consider that phrase in context of the statute and related statutes, we conclude that proceeding against individual tenants was not the legislative intent. *See PGE v. Bureau of Labor and Industries*, 317 Or 606, 611, 859 P2d 1143 (1993) (explaining that the "context of the statutory provision at issue [] includes other provisions of the same statute and other related statutes").

First, there is no statutorily established way to terminate a tenancy as to some, but not all, listed persons when the termination proceeds under ORS 90.427(3)(b). ORS 90.427(1)(a) sets the timing for such a proceeding and explicitly recognizes that there can be more than one tenant residing in a dwelling unit, yet ORS 90.427(3)(b) specifically refers to "the tenancy" in its entirety as what a landlord terminates, not an individual tenant's tenancy.

Further, other provisions in ORS chapter 90 operate to terminate tenancies against one, but not all, of the tenants, indicating that when the legislature intends to consider tenants individually it does so explicitly through releasing tenants from their rental agreements on a tenant-by-tenant basis. *See*, *e.g.*, ORS 90.445(1)(a) (establishing a

process to terminate the rental agreement solely as to a tenant who "perpetrates a criminal act of physical violence related to domestic violence, sexual assault, bias crime or stalking against a household member who is a tenant" but prohibits termination as to the other tenants); ORS 90.453(2) (permitting the release from a rental agreement of a tenant who "[i]s protected by a valid order of protection" or "[h]as been the victim of domestic violence, sexual assault, bias crime or stalking" and that tenant's immediate family members); ORS 90.456 (indicating that the tenancy continues for persons not released from the rental agreement under ORS 90.453, ORS 90.459, or ORS 105.128).

Because ORS 90.427(3)(b) refers to "the tenancy" and not the rental agreement, and because it does not explicitly allow release from the rental agreement for individual tenants, termination under that statute applies to the tenancy in its entirety, which affects all persons listed on the rental agreement.[2]

Having concluded that ORS 90.427(3)(b) refers to the termination in its entirety of the tenancy created by any given rental agreement, and as to all persons listed on that agreement, we now turn to the proper interpretation of the phrase "first year of occupancy" as used in ORS 90.427(3)(b) and ORS 90.427(1)(a). Again, we start with the text which defines "first year of occupancy" as "all periods in which any of the tenants has resided in the dwelling unit for one year or less." ORS 90.427(1)(a). The operative phrases of that definition for purposes of this appeal are "all periods" and "any of the tenants." We address each in turn.

"[W]e typically give terms of common usage their plain, natural, and ordinary meaning, which is presumed to be what is reflected in a dictionary." *State v. Berkey*, 344 Or App 313, 316, 581 P3d 149 (2025) (internal citations and quotation marks omitted).

---

[2] Tenants listed on the rental agreement who do not receive notice of a pending FED action could be able to raise defenses of defective notice (such as failure to properly serve the notice or failure to calculate and cite the correct amount of rent) and thus defeat a landlord's attempt to regain possession of the dwelling unit in its entirety. As a result, we anticipate landlords will act to ensure that notice is properly served on all listed tenants. We observe that, here, landlord served the termination notice on all listed tenants, and there was no challenge made to the sufficiency of that service.

"All" is defined as "the whole amount or quantity of \*\*\* every member or individual component of \*\*\* every[.]" *Webster's Third New Int'l Dictionary* 54 (unabridged ed 2002). As used in the statute, the relevant definition for "period" is "a portion of time determined by some recurring phenomenon." *Id*. at 1680. The "reoccurring phenomenon" is the calendar year; here, "one year or less." The phrase "all periods" thus refers to "every portion of time" that is "one year or less."

Turning to the phrase "any of the tenants," as most applicable in this situation, "any" is defined as:

> "one indifferently out of more than two \*\*\* used as a function word esp. in interrogative and conditional expressions to indicate one that is not a particular or definite individual of the given category but whichever one chance may select \*\*\* one, no matter what one[.]"

*Id*. at 97. "Any of the tenants" thus means "one[,] indifferently out of more than two," "no matter what one" of the people who are signatories to the residential agreement that established the tenancy. Thus, under the plain text of ORS 90.427(1)(a), the "first year of occupancy" includes "every portion of time" when "one, no matter what one" of the tenants "has resided in the dwelling unit for one year or less."

In sum, reading ORS 90.427(1)(a) and ORS 90.427(3)(b) together, if "one, no matter what one" of the tenants has resided in the dwelling unit for one year or less, a landlord "may terminate the tenancy" in its entirety, and as to all persons listed on the rental agreement, by "giving the tenant notice in writing not less than 30 days prior to the date designated in the notice for the termination of the tenancy."

Applying the correct interpretation of ORS 90.427(1)(a) and ORS 90.427(3)(b) to the facts of this case, we conclude that the trial court erred when it granted judgment in favor of Simmons and "all other occupants." It is undisputed that Erlandson-Sims was added to the rental agreement on May 6, 2024. Thus, when landlord mailed a notice of termination of tenancy on September 11, 2024, landlord gave notice "during the first year of occupancy" as that phrase is defined in ORS 90.427(1)(a), because it was during a period when "any of the

tenants ha[d] resided in the dwelling unit for one year or less." We conclude that the notice of termination was valid under ORS 90.427(3)(b) as to all persons listed on the rental agreement, including Simmons, because that rental agreement established the month-to-month tenancy.

Having concluded that the notice of termination was valid as to all persons listed on the rental agreement, we turn to the appropriate disposition. Although Simmons did not appear on appeal, he did appear at trial. His primary defense was that he had lived in the apartment for longer than one year and therefore believed landlord did not have the legal authority to pursue an ORS 90.427(3)(b) termination proceeding against him. However, as we concluded above, landlord initiated the termination proceedings "during the first year of occupancy" because Erlandson-Sims was added to the rental agreement in May 2024, and ORS 90.427(1)(a) defines "first year of occupancy" as a time period when "any of the tenants has resided in the dwelling unit for one year or less." Therefore, Simmons's multi-year residency is not a defense to the ORS 90.427(3)(b) termination proceeding.

Simmons also noted that he was up to date on his rent, that no complaints had been filed against him during his time as a tenant, and, therefore, that landlord had no cause for the eviction. But because ORS 90.427(3)(b) permits termination without cause of a month-to-month tenancy "during the first year of occupancy," those defenses do not apply. Notably, Simmons did not claim that the notice of termination was defective or improperly served, such that the case should be dismissed.

We therefore reverse and remand with instructions to enter a judgment of possession in favor of landlord. Our conclusion on the first assignment of error eliminates our need to address landlord's second assignment of error, regarding the default judgment that landlord asserts should have been entered against "all other occupants."

Reversed and remanded.